UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATTI J. LARA,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. 2:17-cv-2208 AC

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for summary judgment will be DENIED.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on December 24, 2013. Administrative Record ("AR") 21 (Decision).[2] The disability onset date was alleged to be January 26, 2007. Id. The application

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).
[2] The AR is electronically filed at ECF Nos. 9-3 to 9-17 (AR 1 to AR 707).

1

was disapproved initially and on reconsideration. Id. On March 17, 2016, ALJ Christopher C. Knowdell presided over the hearing on plaintiff's challenge to the disapprovals. AR 56 – 88 (transcript). Plaintiff, who appeared with her counsel Betsy Alberts, was present at the hearing. AR 56. Dr. Bonnie Drumwright, a Vocational Expert ("VE"), also testified at the hearing. Id.

On June 24, 2016, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 21-28 (decision), 29-32 (exhibit list). On August 21, 2017, after receiving a "Request for Review of Hearing Decision/Order" and a "Statement of Claimant with representative briefs dated July 17, 2016" as additional exhibits, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-4 (decision and additional exhibit list).

Plaintiff filed this action on October 23, 2017. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 5, 6. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 11 (plaintiff's summary judgment motion), 14 (Commissioner's summary judgment motion), 17 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1952, and accordingly was, at age 61, a person of advanced age under the regulations, when she filed her application.[3] AR 277. Plaintiff has at least a high school education, and can communicate in English. AR 65, 177.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, (9th Cir. 2012). "It means such evidence as a reasonable

---

[3] See 20 C.F.R. § 404.1563(e) ("person of advanced age").

mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Commissioner, 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically

determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.
>
> 2. [Step 1] The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 26, 2007 through her date last insured of December 31, 2011 (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] Through the Date Last Insured (DLI) the claimant had the following severe impairments: degenerative disc disease of the cervical spine, status post-fusion of the lumbar and thoracic spine (20 CFR 404.1520(c)).
>
> 4. [Step 3] Through the date last insured the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes or scaffolds; capable of occasional climbing of stairs and ramps; capable of occasional stooping, crouching, crawling, kneeling and balancing.
>
> 6. [Step 4] Through the date last insured, the claimant was capable of performing past relevant work as a bookseller/cashier. This work did not require the performance of work-related activates precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 26, 2007, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(f)).

AR 23-28.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 28.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to provide clear and convincing reasons for rejecting the opinions of treating physicians Drs. Deriven and Sloop; (2) failing to provide clear and convincing reasons for rejecting plaintiff's testimony; (3) failing to provide legally

5

sufficient reasons for rejecting the testimony of lay witnesses; (4) providing a residual functional capacity that lacks support from substantial evidence; and (5) failing to support with substantial evidence his finding that plaintiff is capable of performing her past work. ECF No. 11 at 13-33. Plaintiff requests that the matter be remanded to the Commissioner for an immediate award of benefits. Id. at 33. Because the court agrees remand for an immediate award of benefits is necessary based on plaintiff's first assertion of error, plaintiff's other contentions are not addressed.

### A. The ALJ Improperly Weighed the Opinions of Treating Physicians

#### 1. The Medical Opinion Evidence and Pertinent Medical Records

The record before the ALJ included the medical opinions of Sally Vertolli, nurse practitioner; plaintiff's treating physicians, J. Randal Sloop, M.D. and Vedat Deviren, M.D.; and those of a state agency consultant, E.L. Gilpeer, M.D. AR 26.

Dr. Gilpeer limited plaintiff to occasionally climbing ramps/stairs, never climbing ladders/ropes/scaffolds, occasionally balancing, stopping, kneeling, crouching or crawling. AR 102. Dr. Gilpeer found plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand for about 6 hours during an 8-hour workday and sit for 6 hours during an 8-hour workday. AR 101-02. Dr. Gilpeer's findings were as to plaintiff's condition as of the date last insured, and were based on notes from UCSF Medical Center dated 9/12/2011 (2 years status post L2 to L4 fusion and revision to L4 fusion for adult scoliosis), which noted plaintiff had no apparent distress, walked with a nonantalgic gait, walked without difficulty on heals and tows, stood normally, had 5/5 strength in her lower extremities, had intact sensation in the L1 through S1 nerve root distributions with normal reflexes in the lower extremities, and a well-healed surgical wound. AR 102. Although muscle tenderness was noted, the report said that plaintiff "continues to do quite well." Id.

Plaintiff saw Nurse Vertolli for primary care from at least 2003 to February 2016. AR 345-366, 372-74, 386-402, 630-78. Dr. Sloop is listed as having reviewed and agreed with contemporaneous treatment notes on July 6, 2013 (AR 346) and January 20, 2015 (AR 399). In December of 2006, Nurse Vertolli noted that plaintiff had long been struggling with back pain

6

due to scoliosis, and the pain was progressing with increased pain in the mid-back, lower thoracic, and upper lumbar regions. AR 649. Multiple imaging scans from January 2007 showed prominent scoliosis deformity. AR 295-96, 317. On January 25, 2007, Dr. Vedat Deviren performed back surgery on plaintiff, which included a 13-level osteotomy from T4 to L4, segmental spinal instrumentation from T4 to L4, posterior spinal fusion from T4 to L5 and local bone graft. AR 267-69.

By March of 2008, a progress note from Skyway Primary Care, which employed Nurse Vertolli and Dr. Sloop, stated that plaintiff was having migratory pain in her thoracic area, shoulders, and lower back; plaintiff described her pain level as "bad." AR 644. Nurse Vertolli's notes from August and September of 2008 indicate plaintiff's back pain persisted and she was experiencing muscle spasms in her upper back. AR 641-42. By October of 2008, notes reflect plaintiff' reported her back pain was "killing" her. AR 638.

In December of 2008, Dr. Deviren noted plaintiff was suffering nerve root pain and her upper hardware had become prominent. AR 552. In a December 8, 2009 letter, Dr. Deviren noted that plaintiff experienced an episode of acute upper back/shoulder pain with residual pain that persisted 6-8 weeks past the event, though more recently she was doing well. AR 609. X-Rays showed that the right top two screws of plaintiff's rod had pulled out from the vertebrae. AR 609. In February of 2009, plaintiff underwent surgery to have the hardware from T4 to T6 removed. AR 552, 598, 602. She was discharged on February 24, 2009, but suffered an infection in the surgical wound shortly thereafter. AR 557, 553. Plaintiff was admitted through the emergency room for her wound infection. AR 269, 518, 536, 542, 553. She was taken into surgery to remove her hardware. AR 272-73, 553, 564. Plaintiff was discharged March 4, 2009 with a course of IV antibiotics. AR 272, 530, 542-47, 561-64. Plaintiff had further corrective surgery, including a spinal fusion from T1 through L4, on April 28, 2009. AR 273, 275, 465, 481, 497).

On April 30, 2009 plaintiff reported sharp shooting pain and numbness in her right leg. AR 472, 495. Plaintiff underwent surgery to redo the laminectomies at T4 to T7 and hardware removal and re-instrumentation from T1 to L4. AR 475-77, 487-90. Plaintiff was discharged

7

May 5, 2009 with instruction to avoid any twisting, bending, and heavy lifting. AR 466-67. In a letter dated July 13, 2009, Dr. Deviren noted that plaintiff was approximately two and a half months status post-surgery, and had experienced a long course of recovery that included infection, hardware removal, and hardware replacement/revision fusion. AR 456. Dr. Deviren noted that though plaintiff was healing well at the time she had some residual pain in her neck, shoulder, and buttock, and recommended physical therapy and additional surgery to promote bone growth and give her a solid fusion. Id. Dr. Deviren noted that plaintiff was unsure about further surgery, and that plaintiff reported she had multiple weddings that upcoming September and October that she wanted to be in good health for. AR 456-57. On September 15, 2009, plaintiff underwent another back surgery to reinforce the fusion at L2 to L4. AR 425, 447-49. Plaintiff was released with spinal precautions, including no bending, twisting, lifting of over 5-10 pounds, or sitting for more than 40 minutes at a time. AR 436.

In a letter dated April 12, 2010, Dr. Deviren noted that despite doing well the past November, plaintiff had increased left-side parascapular pain. AR 705. Examination revealed extreme tenderness to palpitation over plaintiff's left die trapezius and paraspinal region, as well as pain over the greater trochanters of her hips bilaterally. Id. Plaintiff had 5/5 strength in upper and lower extremities and a normal gate. Id. Dr. Deviren assessed muscle pain, and suggested trigger point injections and a follow-up CT scan. Id. Plaintiff saw Dr. Deviren again in September 2011 and reported her lower back pain was the same; worse with movement and relieved with rest. AR 284. It was noted plaintiff could walk up to 2 hours, but with extensive activity she experienced a lot of pain. AR 285. At the time, plaintiff reported her pain was not significantly limiting her activity or quality of life. Id. It was noted plaintiff was significantly tender to palpitation in her left hip in the musculature proximal to her greater trochanter. Id.

In November of 2014, Dr. Deviren completed a Medical Source Statement in which he assessed the following limitations: plaintiff can carry and lift no more than 10 pounds. AR 405. She can stand and/or walk for less than 2 hours in an 8-hour workday due to a long spinal fusion that prevents bending, lifting, and sitting for long periods of time. Id. She cannot sit for any length of time even with normal breaks, and she can never climb, balance, stop, kneel, crouch, or

8

crawl. AR 405-06. She cannot sustain an 8-hour workday on a full time 40 hour per week basis. AR 406. She has not been able to perform any work since January 25, 2007. Id.

Nurse practitioner Sally Vertolli filled out a medical source statement on February 2, 2016, which was signed by Dr. Sloop. AR 372-74. Nurse Vertolli opined that plaintiff was limited to lifting less than 10 pounds both frequently and occasionally, that she could stand and sit less than 2 hours in an 8-hour workday, with the need to elevate her legs every two hours. AR 372. Nurse Vertolli stated that plaintiff could work no hours in an 8-hour workday; that she could never climb, balance, stoop, kneel, crouch, or crawl; that she could rarely or never reach, and she could only occasionally handle or finger. AR 373. Nurse Vertolli stated plaintiff could not work around moving machinery, and that she would need to lie down 1-2 times daily. AR 373. Nurse Vertolli concluded plaintiff has been totally unable to perform even sedentary work since March of 2009. Id. However, in notes from March of 2015, Nurse Vertolli remarked that plaintiff "appears to enjoy her role and not pressured to be more active. We talked about how limited her life will be if she continues on this path . . . discussed strategies to overcome procrastination." AR 267, 397-98.

The ALJ gave great weight to the state agency consultant's assessment. AR 26. The ALJ gave little weight to the assessment of Nurse Vertolli and Dr. Sloop, and to the assessment of Dr. Deviren. Id. In discounting the treating physicians, the ALJ reasoned that they "did not provide support for their assessments with objective evidence" and "their opinions are contradicted by the treatment records which noted controlled pain and claimant reports of walking up to one to three miles." AR 27. The ALJ also noted that the assessments occurred after the date last insured, and asserted they were not consistent with the treatment that occurred from 2010 through the date last insured of December 31, 2011. Id.

2. Principles Governing the ALJ's Consideration of Medical Opinion Evidence

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996). "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the

9

ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).

"The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

### 3. The ALJ Erred in Discounting the Opinions of Treating Physicians

The ALJ erred in discounting the medical opinion of Dr. Deriven and Dr. Sloop/Nurse Vertolli. As a preliminary matter, the Commissioner argues that the ALJ was not required to give the Sloop/Vertolli opinion the same level of weight as information from an accepted medical source because, working on her own, Nurse Vertolli is not an accepted medical source and there is no evidence that Dr. Sloop was actually supervising Nurse Vertolli's care of the plaintiff. ECF No. 14 at 15; see Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996), superseded by regulation as stated in Hudson v. Astrue, CV 11–0025–CI, 2012 WL 5328786, at *4 n. 4 (E.D.Wash. Oct. 29, 2012). In Gomez, the Ninth Circuit stated that "a nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not." Gomez, 74 F.3d at 971. Hudson points out that this interpretation was construed under "interdisciplinary team" language in the regulations that has since been removed from the definition of "acceptable medical sources." 2012 WL 5328786, at n. 4. Although the ALJ's argument is correct insofar as Dr. Sloop does not appear to have had a true "treating

10

source" relationship with the plaintiff within the meaning of 20 C.F.R. § 404.1527(a)(2), having only signed off on contemporaneous treatment notes for Nurse Vertolli twice and both times after the date last insured (AR 346, 399), the Commissioner's argument fails because the ALJ did not reject Dr. Sloop/Nurse Vertolli's opinion for this reason. The court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014).

The ALJ gave two reasons for discrediting the Dr. Sloop/Nurse Vertolli opinion and the Dr. Deviren opinion. The ALJ asserted that, (1) "their opinions are contradicted by the treatment records which noted controlled pain and claimant reports of walking up to one to three miles (Exhibits 15F/20 and 5F/1)," and (2) their "opinions occurred well after the date last insured and are not consistent with the claimant's complaints and level of treatment from 2010 through the date last insured of December 31, 2011." AR 26-27. Neither of these reasons withstand scrutiny.

As to conflict with the record, the ALJ's citations are not persuasive. At Exhibit 15F/20, notes from Dr. Deviren dated January 21, 2011 indicate that plaintiff could, at the time, walk about three miles on weekends and otherwise 30 minutes every other day. AR 698. The same notes report that plaintiff was experiencing worse low back pain, especially on the left side, and a return of pain over the bilateral greater trochanters, and buttock pain. Id. At Exhibit 5F/1, notes from Nurse Vertolli (electronically signed by Dr. Sloop) dated November 19, 2012 stated that plaintiff's pain was well controlled at the time, and she was taking norco for chronic back pain. AR 345. The notes reported plaintiff was walking three miles 3-4 times per week for exercise. Id.

As is apparent from the record discussed in detail above, these discrete medical notes do not contradict the ongoing and serious medical treatment plaintiff had been receiving for her back. An ALJ may not reject a doctor's opinion in conclusory fashion, by merely stating that it is unsupported by the record. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). To satisfy the requirement for specific and legitimate reasons supported by substantial evidence, the ALJ must set out a detailed and thorough summary of the facts and conflicting clinical evidence, state her interpretation of that evidence, and making findings. Garrison v. Colvin, 759 F.3d 995, 1012

11

(9th Cir. 2014). The ALJs reference to two isolated instances of plaintiff's pain being well managed do not meet this standard. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). Plaintiff's extensive treatment record, particularly with Dr. Deviren, clearly demonstrates the serious, ongoing and pervasive nature of her back pain and isolated instances of plaintiff doing well or attempting to exercise as recommended by her treatment plan (AR 297-99, 400, 456, 700) do not negate her limitations or undermine the opinions of her treating medical professionals.

As to the fact that the medical opinions were issued after the date last insured, case law unambiguously allows for the consideration of such opinions. The Ninth Circuit has long held that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995), as amended (Apr. 9, 1996), citing Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988). The fact that Dr. Deviren and Dr.Sloop/Nurse Vertolli's opinions were issued after the date last insured is of little relevance, especially in light of the lengthy and detailed relationship the physicians had with the plaintiff during her insured period, described in detail above. The mere fact that the opinions were issued after the date last insured is not a legitimate reason to discount the opinions.

Because the ALJ did not provide adequate specific or legitimate reasons for discrediting Drs. Deviren and Sloop and Nurse Vertolli, the undersigned finds reversible error. The error is not harmless because it alters the finding on disability, as described further below. The record does not contradict the assessments of the treating physicians. Thus, the undersigned finds the medical opinions of Dr. Sloop/Nurse Vertolli (AR 372-74) and Dr. Deviren (AR 405-06) should be credited in full.

B. Remand for an Immediate Award of Benefits

As discussed, the ALJ erred in rejecting Dr. Sunde's opinion and that error was not harmless. Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of

12

Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2000).

More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000)).

Under the second step in the remand analysis, the court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016) (quoting Treichler, 775 F.3d at 1101). Under the third step in this analysis, the court should remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted).

In this case, if Dr. Deviren and Dr. Sloop/Nurse Vertolli's opinions were credited as true – indeed, if even just one of their opinions were credited as true – plaintiff would necessarily be found disabled under the applicable regulations. Dr. Deviren opined that plaintiff cannot sustain an 8-hour workday on a full time 40 hour per week basis. AR 406. He stated that has not been able to perform any work since January 25, 2007. Id. Nurse Vertolli/Dr. Sloop opined that plaintiff was limited to lifting less than 10 pounds both frequently and occasionally, that she could stand and sit less than 2 hours in an 8-hour workday, with the need to elevate her legs every two hours. AR 372. They stated that plaintiff could work no hours in an 8-hour workday; that she could never climb, balance, stoop, kneel, crouch, or crawl; that she could rarely or never

13

reach, she could only occasionally handle or finger, that she could not work around moving machinery, and that she would need to lie down 1-2 times daily. AR 373. Nurse Vertolli/Dr. Sloop concluded plaintiff has been totally unable to perform even sedentary work since March of 2009. Id. As discussed above, the physicians' opinions are consistent with the medical record and there are no ambiguities.

It is clear from the record that if the physicians' opinions are properly credited, plaintiff must necessarily be found disabled. When the VE was asked whether an individual limited to sedentary work who could not climb, stoop, kneel, crouch or balance and who could work only part time, four hours per day could perform any work, the VE answered in the negative. AR 84. In fact, in the hearing transcript the ALJ himself explicitly found that the RFC described in the Dr. Sloop/Nurse Vertolli opinion was "not compatible with full time work." AR 86. Because the VE and the ALJ found that no jobs were available for plaintiff when the physicians' opinions were credited, plaintiff is disabled under the Act.

Where the above steps are satisfied, this court must exercise its discretion in determining whether to remand for further proceedings, or for the immediate calculation and award of benefits. Dominguez, 808 F.3d at 407 (if disability finding would necessarily follow if discredited evidence were credited as true, "the district court may exercise its discretion to remand the case for an award of benefits"). If, despite satisfying the above steps, the "record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," the court should remand for further proceedings. Burrell, 775 F.3d at 1141 (quoting Garrison, 759 F.3d at 1021). However, the court would be "abus[ing] its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that [the plaintiff] is not, in fact, disabled." Garrison, 759 F.3d at 1021.

Here, the record leaves no doubt that the plaintiff is disabled within the meaning of the Act. The VE and ALJ both stated at the hearing that the physicians' opinions precluded the maintenance of employment. AR 84-86. Nothing in the record contradicts the physicians' findings; in fact, the record overall supports them. Accordingly, the court finds that plaintiff is

14

disabled within the meaning of the Act and no further fact finding is necessary.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11), is GRANTED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 14), is DENIED;
3. The matter is REVERSED and REMANDED to the Commissioner for an immediate award of benefits; and
4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

SO ORDERED.

DATED: January 2, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE